**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOANNE KIMBROUGH and WILLIE J. KIMBROUGH, SR. et al.,**

      **Plaintiff,**

-vs-                                                                                                **Case No. 6:05-cv-471-Orl-31KRS**

**CITY OF COCOA, et al.**
      **Defendants.**

_____

**ORDER**

This case arises out of the events surrounding the death of Willie J. Kimbrough, Jr. ("Kimbrough"). This matter comes before the Court on a Motion for Summary Judgment (Doc. 303) filed by the Defendants, Central Brevard Radiology Associates, P.A. ("CBR") and Catherine L. Gardner, M.D. ("Gardner"), and the Plaintiffs' Response thereto (Doc. 321).

**I. Background**

The Plaintiffs, Joanne Kimbrough and Willie J. Kimbrough, Sr., are Kimbrough's parents, and are co-personal representatives of the estate of Kimbrough (the "Estate"). They bring this action on behalf of the survivors of the Estate, including Ashanti Kimbrough, Victoria Fisher Kimbrough, and Di'Andre Michael O'Shone White (the minor surviving children of Kimbrough). (Doc. 121 at 5).

On November 30, 2002, Kimbrough was walking in the vicinity of St. John's Street and Blake Avenue, near the Shadozz Lounge, in Cocoa, Florida. (Doc. 121 at 8). Kimbrough was chased, beaten and arrested by several City of Cocoa police officers. (Doc. 121 at 9-10). As a

result of the beating, Kimbrough suffered blunt traumas to his head, face, arms, chest, back and lower extremities, particularly his left leg. (Doc. 121 at 10). The beating was so severe that Kimbrough defecated on himself during the incident. (Doc. 121 at 10).

Kimbrough was transported to the City of Cocoa Police Department ("CPD"), where he remained until December 1, 2002, when he was transported to, and admitted at, the Brevard County Detention Center ("BCDC"). (Doc. 121 at 10-11). While at BCDC, Kimbrough complained of difficulty breathing, painful swallowing, and extreme pain in his back, sides, face and thigh. (Doc. 121 at 12). Several inmates had to assist Kimbrough to the bathroom because he was unable to walk. (Doc. 121 at 12). While using the bathroom, Kimbrough passed blood. (Doc. 121 at 12).

On December 4, 2002, Kimbrough was bonded out and taken by family members to Cape Canaveral Hospital ("CCH"), where Gardner and CBR, among others, undertook the duty to provide, and did provide, medical care to Kimbrough. (Doc. 121 at 13). Kimbrough presented to CCH with blood in his urine and severe diffuse body aches. (Doc. 121 at 13). He was diagnosed with acute renal failure secondary to rhabdomyolysis, and a history of hepatitis and electrolyte abnormalities secondary to rhabdomyolysis.[1] (Doc. 121 at 13). Dr. Peter S. Dovgan ("Dovgan") placed a right internal jugular catheter for hemodialysis access, after which Kimbrough began to

---

[1] Rhabdomyolysis is the destruction or degeneration of skeletal muscle tissue (as from traumatic injury, excessive exertion, or stroke) that is accompanied by the release of muscle cell contents (as myoglobin and potassium) into the bloodstream resulting in hypovolemia (a decrease in the volume of the circulating blood), hyperkalemia (the presence of an abnormally high concentration of potassium in the blood), and sometimes acute renal failure. Medline Plus, U.S. National Library of Medicine, available at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last modified February 4, 2003).

have difficulty breathing, became hypotensive with decreasing systolic blood pressure, became unresponsive, and was pronounced dead approximately twenty minutes later. (Doc. 121 at 13-14).

The Plaintiffs allege that the Defendants failed to diagnose, care for and treat Kimbrough in accordance with the accepted standards of care for physicians, it is more likely than not that but for the "Defendant medical providers' negligence" Kimbrough would have survived, and because of the defendants' failure to properly treat and care for Kimbrough, he suffered a decline in his condition and death. (Doc. 121 at 14).

The Plaintiffs specifically assert that Gardner breached her duty of care to Kimbrough by "inaccurately reporting the chest x-ray of December 4, 2002, by reporting that the internal jugular line catheter was located in the superior vena cava or right atrium with no evidence of pneumothorax," and that as a direct and proximate result of that negligence, the Plaintiffs are entitled to certain damages. (Doc. 121 at 68). Further, the Plaintiffs allege that Gardner was acting during the course and scope of her employment by, or as an agent of, CBR, and that it "is more likely than not had [Kimbrough's] condition been timely and properly diagnosed and appropriate treatment been rendered by [Gardner], [Kimbrough] would not have suffered injuries, including, but not limited to, further decline in his condition and his demise on December 4, 2002." (Doc 121 at 69-70). Finally, the Plaintiffs allege that as a direct and proximate result of Gardner's negligence, they are entitled to recover certain damages from CBR. (Doc. 121 at 70).

## II. Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to

the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

**III. Legal Analysis**

Plaintiffs' medical negligence claim is governed by Florida substantive law and Federal procedural law. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). "Section 766.102(1) [of the Florida Statutes] provides that a plaintiff in a medical malpractice claim has the burden of proving by the greater weight of the evidence that the actions of a defendant health care provider breached the prevailing professional standard of care for that provider." *Williamson v. Roth*, 120 F. Supp. 2d 1327, 1337 (M.D. Fla. 2000). "Plaintiff must provide expert testimony to establish the prevailing professional standard of care." *Lambert v. United States*, 2005 U.S. Dist. LEXIS 21059, *9 (M.D.Fla. September 26, 2005). Here, Defendants allege that Plaintiffs have failed to produce an expert witness competent to testify to the applicable standard of care. (Doc. 303 at 6).

With regard to the competency of witnesses, the Federal Rules of Evidence provide that:

Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

Fed. R. Evid. 601. The Eleventh Circuit has interpreted this Rule to mean that in cases involving state medical malpractice claims, Federal courts should apply the state laws to determine competency of expert witnesses. *See McDowell v. Brown,* 392 F.3d 1283, 1295-6 (11th Cir. 2004) (adopting the reasoning in *Legg v. Chopra,* 286 F.3d 286 (6th Cir. 2002)).[2]  Therefore, Florida law regarding the competency of expert witnesses in medical malpractice cases will be applied here.

---

[2] The Eleventh Circuit further instructs that, once an expert witness is found competent under state law, "his or her testimony should then be screened by Fed. R. Evid. 702 to determine if it is otherwise admissible expert testimony." *McDowell*, 392 F.3d at 1295 (citations omitted). However, because the Defendants have not alleged any violations of Fed. R. Evid. 702, that issue will not be discussed.

Under Florida law, in order to qualify a witness as an expert in a medical negligence case, it must be shown that the witness either:

>1. Is a similar health care provider pursuant to paragraph (a) or paragraph (b); or
>2. Is not a similar health care provider pursuant to paragraph (a) or paragraph (b) but, to the satisfaction of the court, possesses sufficient training, experience, and knowledge as a result of practice or teaching in the specialty of the defendant or practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience, or knowledge must be as a result of the active involvement in the practice or teaching of medicine within the 5-year period before the incident giving rise to the claim.

Fla. Stat. § 766.102(2)(c) (2002).[3]

When the defendant is a certified specialist, a witness cannot be considered a "similar health care provider" unless he is certified in the same specialty as the defendant. Fla. Stat. § 766.102(2)(b) (2002). However, "one need not be of the same specialty or branch of medicine [to] be qualified to give expert testimony on the standard of care." *Wright v. Schulte,* 441 So. 2d 660, 662 (Fla. 2d DCA 1983). When the witness offered to establish the standard of care in a medical negligence case is not a similar health care provided, the Court is obligated to examine his background and credentials to determine whether the witness can qualify as an expert witness under Fla. Stat. § 766.102(2)(c)(2). *Mitchell v. Angulo*, 416 So. 2d 910, 912 (Fla. 5th DCA 1982).

In *Green v. Goldberg,* an oncologist was allowed to testify as an expert witness in a medical negligence case against a surgeon. 630 So.2d 606 (Fla. 4th DCA 1993). In that case, the plaintiff's wife died of breast cancer. The oncologist was permitted to testify as to whether the surgeon should have conducted a biopsy earlier. Even though the oncologist did not actually

---

[3]This statute has been amended in 2003 and 2004, however, the 2002 version was in effect when the cause of action accrued and therefore applies in this case. Neither party disputes this.

perform biopsies in his practice, he was qualified to testify because he frequently made recommendations to surgeons regarding the need for biopsies in possible cancer cases.  The Court noted that the central issue was the detection of cancer, not the conducting of surgery.

> [The witness] was qualified by training, education and experience in the diagnosis of breast cancer and possessed knowledge about the standards relating to when a biopsy should be performed, gained through experience, background and training.

*Green,* 630 So.2d at 609.

In *Wright v. Schulte,* a gynecologist, who did not perform surgery in his practice, was permitted to testify against a surgeon.  The Court explained that "while the witness must have sufficient familiarity with the particular medical technique involved in the suit, he need not have personally performed the procedure or be a specialist in the area." 441 So. 2d at 662-663. Regardless of whether the expert's knowledge comes from personal experience, observation, or study, it is enough that the expert "exhibits such a degree of knowledge as to make it appear that his opinion is of some value . . ." *Id.* at 662.

Under Florida law, "it is really a question of minimum standards as to whether a witness can testify."*Mitchell,* 416 So.2d at 912.

> The clear purpose of the subsection is to restrict experts who claim to possess expertise on the gamut of medical problems and specialties and to eliminate those experts who are no longer actively involved in medicine.

*Green,* 630 So.2d at 608.

Defendants argue that Plaintiffs' expert witness, Dr. D. Preston Flanigan ("Flanigan"), is not qualified to testify against Gardner under § 766.102. (Doc. 303 at 6). Defendants point out that Flanigan is not a board-certified radiologist, does not generate x-ray reports and does not practice diagnostic radiology. (Doc. 303 at 8).  Plaintiffs argue, however, that Flanigan is qualified because

-7-

he frequently reads chest x-rays himself, practices "some interventional radiology," and receives verbal reports from radiologists to determine proper placement of dialysis catheters. (Doc. 321 at 4-5).

There appears to be no dispute that Flanigan does not qualify as a "similar health care provider" under § 766.102(2)(b) because he is not certified in the same specialty as Gardner. However, Flanigan still qualifies as an expert because he "possesses sufficient training, experience, and knowledge as a result of practice or teaching in the specialty of the defendant." Fla. Stat. § 766.102(2)(c)(2) (2002).

Flanigan has "read more than 1,000 chest x-ray films to assess catheter placement and to rule out complications following placement of dialysis catheters." (Doc 321-3 at 1). The mere fact that he is not a board-certified radiologist and does not make written or oral reports to surgeons is not enough to disqualify him as an expert. *See Fetell v. Drexler,* 422 So. 2d 89 (Fla. 3d DCA 1982) (allowing a board-certified surgeon to testify in a suit against a radiologist). This case is about the detection of a misplaced dialysis catheter, not radiology in general. Flanigan is a board certified vascular surgeon and has extensive experience in evaluating the insertion of dialysis catheters. Certainly Flanigan has enough experience analyzing x-rays to offer a credible opinion as to whether Gardner interpreted Kimbrough's x-ray and reported the findings properly. Flanigan asserts that he has "relied on radiologists to read similar x-ray films and routinely [has] been called with verbal reports about catheter positions and complications." (Doc. 321-3 at 3). Therefore, he is also qualified to testify as to the adequacy of Gardner's report because he possesses sufficient knowledge of the type of information those reports typically do and should contain.

Defendants also argue that, even if Flanigan is qualified as an expert, Gardner is entitled to summary judgment because Dovgan's testimony indicating that "assuming the report he received verbally . . . paralleled that of the written report . . . he would not have done anything differently" destroys the causal link between Gardner's actions and Kimbrough's death. (Doc. 303 at 11). However, Flanigan opines not only that Gardner's reports of the catheter position were too vague, but also that Gardner incorrectly read the x-ray in the first place. (Doc. 321-3 at 2). Therefore, there are still genuine issues of material fact as to both breach and causation and summary judgment is inappropriate.

**IV. Conclusion**

For the reasons stated above, summary judgment is inappropriate in this case.

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 303) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 7, 2006.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE