**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOANNE KIMBROUGH and WILLIE J. KIMBROUGH, SR. et al.,**

       **Plaintiff,**

-vs-                                                                                              Case No. 6:05-cv-471-Orl-31KRS

**CITY OF COCOA et al.,**

       **Defendants.**

_____

# ORDER

This case arises out of the events surrounding the death of Willie J. Kimbrough, Jr. ("Kimbrough"). This matter comes before the Court on Motions for Judgment on the Pleadings and Summary Judgment filed by Defendant Brevard County ("the County") (Doc. 339) and Plaintiffs' Response thereto (Doc.395).

**I. Background**

*A) Parties*

The Plaintiffs, Joanne Kimbrough and Willie J. Kimbrough, Sr., are Kimbrough's parents, and are co-personal representatives of the estate of Kimbrough ("the Estate"). They bring this action on behalf of the survivors of the Estate, including Ashanti Kimbrough, Victoria Fisher Kimbrough, and Di'Andre Michael O'Shone White (the minor surviving children of Kimbrough). (Doc. 121 at 5)[1] against multiple defendants, including Brevard County, FL.

---

[1] Doc. 121 refers to Plaintiff's Third Amended Complaint.

Prison Health Services, Inc. ("PHS") is a private company which was under contract with the County in December, 2002 to provide medical services to inmates incarcerated at the Brevard County Detention Center ("BCDC"). Dr. Aileen Norgell ('Norgell") was the Medical Director at BCDC, employed by PHS, in December 2002. PA Beverly Wood ("Wood") and RN Sandra Latier ("Latier") were employees of PHS, working at BCDC, in December, 2002.

*B) Treatment of Kimbrough*

On the night of November 30, 2002, Kimbrough was chased, beaten and arrested by several police officers in the City of Cocoa. In the early morning hours of December 1, 2002 Kimbrough was transported to BCDC. (Wood Depo. at 214-15). When he arrived at BCDC his eye was badly bruised and swollen and he had trouble standing while being fingerprinted. (Mendiola Depo. at 11-12, 17; Peggy Williams Depo. at 9-10). Rather than sending Kimbrough to the hospital, BCDC took custody of him.

At 4:00 p.m. on December 1st, Kimbrough was seen in the infirmary by Latier, who noted that he was in a wheelchair because he was unable to walk, he had a black eye, and his left thigh was swollen. (Latier Depo. at 42-44). Norgell approved a telephone order for two Extra Strength Tylenol twice daily and Kimbrough was placed in the medical pod of the jail. (Latier Depo. at 46-48).

On December 2, 2002 Kimbrough visited the infirmary twice and was seen by Norgell both times. Kimbrough told Norgell that he had been beaten by police officers and that he thought his left leg and ribs were broken. (Norgell Depo. at 71). Kimbrough was still in a wheelchair and told Norgell that he could not walk because his leg hurt. (Norgell depo. at 71). He also complained that he had been vomiting blood and had blood in his stool. (Norgell Depo. at 71). Norgell did a brief

physical examination and prescribed 650mg of Tylenol twice daily, and 150mg of Zantac twice daily. (Norgell Depo. at 17, 79-81). During Kimbrough's second visit to the infirmary, Norgell ordered an X-ray of his leg and chest but these x-rays were never performed. (Norgell Depo. at 98; Wood Depo. at 133). Norgell admits that she only examined Kimbrough's thighs while he was seated in the wheelchair and did not examine the back of either thigh. (Norgell Depo. at 120-1). She offered him a bed in the infirmary but he refused because he wanted access to the telephone. (Norgell depo. at 106).

At some point on December 3, 2002 Norgell was notified that Kimbrough had been having trouble urinating and had blood in his urine. (Norgell Depo. at 129-30). She ordered a urinalysis and Wood offered to perform the test. (Norgell Depo. at 129-30). Kimbrough was brought to the infirmary at 3:30p.m. on December 3rd, and Wood attempted to get a witnessed urine sample from him, but Kimbrough was unable to urinate. (Wood Depo. at 71-4). At this time Kimbrough complained of sweats and coughing up blood. (Wood Depo. at 75-6). Wood was concerned that he had a respiratory infection, possibly even tuberculosis. (Wood Depo. at 75-6). Wood listened to his breathing with a stethoscope and prescribed two kinds of antibiotics. (Wood Depo. 76, 189). Wood also noticed at this time that Kimbrough was having trouble standing up on his own. (Wood Depo. at 91). Wood tried to obtain a urine sample again at 5:15p.m. with no success. (Wood Depo. at 94-5). At that point she offered to catheterize Kimbrough but he refused. Wood was not able to obtain a sample from Kimbrough until 8:20p.m. (Wood Depo. at 95-6). Wood testified that Kimbrough's urine was "amber" when it should have been "straw colored." (Wood Depo. at 107). She believed there was blood in his urine but did not use a microscope to find out if it was blood or myoglobin producing the red color. (Wood Depo. at 151-2). Wood admits that at this point she

suspected that Kimbrough had one of three serious medical conditions: dehydration, injury to his kidneys, or problems with the flow of blood to the kidneys. (Wood Depo. at 99-102). She ordered blood work to be done the next morning. (Wood Depo. at 138).

Late in the evening of December 3rd Kimbrough made bond and was picked up by his family. His family took him to Cape Canaveral Hospital at 1:22am on December 4th, where he was diagnosed with acute renal failure secondary to rhabdomyolysis.[2] (Doc. 384-4; Doc. 384-5). Kimbrough died later that day.

## II. Motion For Judgment on the Pleadings

*A) Standard of Review*

> On a motion for judgment on the pleadings, the Court must review the pleadings in the light most favorable to the nonmovant. The Court may grant the motion only if it appears beyond a doubt that the nonmovant can prove no set of facts in support of his claim which would entitle him to relief, or if material facts are undisputed and judgment on the merits is possible by merely considering the contents of the pleadings.

*Bradley Factor, Inc. v. United States*, 957 F. Supp. 1259, 1260 (M.D. Fla. 1997).

Federal Rule of Civil Procedure 8(a)(2), requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard has become known as "notice" pleading because all that is necessary is that the Plaintiff provide enough information to put the Defendant on notice as to the allegations being made. *See Swierkiewicz v. Sorema N.A.*, 534 U.S.

---

[2] Rhabdomyolysis is the destruction or degeneration of skeletal muscle tissue (as from traumatic injury, excessive exertion, or stroke) that is accompanied by the release of muscle cell contents (as myoglobin and potassium) into the bloodstream resulting in hypovolemia (a decrease in the volume of the circulating blood), hyperkalemia (the presence of an abnormally high concentration of potassium in the blood), and sometimes acute renal failure. Medline Plus, U.S. National Library of Medicine, available at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last modified February 4, 2003).

506, 512 (2002). In ruling on the sufficiency of a claim, the Court is instructed to construe all pleadings so as to do substantial justice and to resolve all ambiguities in favor of the nonmovant. *See Bradley Factor, Inc. v. United States*, 957 F. Supp. 1259, 1260 (M.D. Fla. 1997).

    *B) Legal Analysis*

The County argues that Plaintiffs' wrongful death claim should be dismissed because the claim is based on allegedly deliberately indifferent and/or intentional acts by its employees for which it is not liable under Fla. Stat. § 768.16, *et. seq.*, the Florida Wrongful Death Act. (Doc. 339 at 1, 9). However, Plaintiffs assert that the wrongful death claim is merely pled in the alternative to its claim under 42 U.S.C. 1983 ("§ 1983"). (Doc. 395 at 11). That is, only if the jury finds that the employees actions were merely negligent, rather than deliberately indifferent, do the plaintiffs seek to recover from the County under Florida's Wrongful Death Act. (Doc. 395 at 11).

Rule 8 specifically allows the Plaintiff to make inconsistent claims. Fed. R. Civ. P. 8(e)(2). Therefore, it is perfectly permissible for the Plaintiff to make both a § 1983 claim and a wrongful death claim against the Defendants, even though those claims are mutually exclusive. Plaintiffs have volunteered to withdraw any reference to intentional or deliberately indifferent acts that it may have inadvertently referenced in its claim for relief under the Wrongful Death Act. However, such withdrawal appears unnecessary. Again, the purpose of Rule 8 is simply to put defendants on notice as to what actions they will be required to defend. Plaintiffs' complaint surely meets that standard. Defendant is well aware of the actions it is required to defend and that it must defend accusations that those actions were deliberately indifferent, or at the very least negligent. No clarification is required and the Defendant is not entitled to Judgement on the Pleadings with regard to this claim.

**III. Motion for Summary Judgement**

*A) Standard of Review*

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving

party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

    *B) 42 U.S.C. § 1983*

First, the County argues that it cannot be liable under § 1983 because it does not have control of BCDC, that instead BCDC is under the control of the Sheriff. However, according to Florida law, the County is responsible for the maintenance and operation of BCDC. *See* Fla. Stat. 950.001(b) (2002). In the execution of this responsibility, the County is permitted to enter into contracts with private parties for the provision of jail services. *See* Fla. Stat. § 951.062 (2002). The County took advantage of this option when it entered into a contract with PHS for the provision of medical services at BCDC. (See e.g. Doc. 395-4) It is true that, under Florida law, the County *may* delegate responsibility for its jails to the Sheriff, which the County has in fact done with respect to BCDC. *See* Fla. Stat. 951.061(1) (2002). However, the Sheriff is a County Official, not a distinct and separate entity as the County alleges, and therefore such designation does not relieve the County of its responsibility or liability regarding BCDC. *See* Fla. Stat. § 145.071 (2002); Fla. Const. Art. VIII § 1(d) (2002).

The County correctly asserts that the doctrine of respondeat superior does not apply to claims arising under § 1983. *Engelleiter v. Brevard County Sheriff's Dept.*, 290 F. Supp. 2d 1300, 1308 (M.D.Fla. 2003). However, the County then argues that to establish a claim against it, Plaintiff must show that the violation of Kimbrough's constitutional rights was the result of a

"policy" or "custom" maintained by the County.   Defendant contends that Plaintiffs have failed to produce evidence of a custom or policy of the County that caused Kimbrough's injuries.

Defendant, however, has ignored a large body of case law in its argument.  While it is true that § 1983 liability cannot be imposed under a theory of respondeat superior, the County may still be liable under § 1983 for the single act of a final policymaker. *See Mandel* at 791-2.  In fact, the County's liability under § 1983 may be established in one of four ways:

> (1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, *or* (2), the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, *or* (3) the final policymakers of the local governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, *or* (4) the final policymakers of the local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate employee.

*Sherrod v. Palm Beach County School District,* 424 F. Supp. 2d 1341, 1344 (S.D.Fla. 2006) (emphasis added).

In this case, the County delegated its policymaking authority over medical decsions at the prison to PHS and its employees. Norgell's position as the Medical Director for BCDC, gave her final policymaking authority over medical decisions at BCDC and therefore, because of its delegation, the County can be held liable for any deliberately indifferent acts by Norgell that led to a violation of Kimbrough's constitutional rights.  It is clear from the testimony of the parties that Norgell had final policymaking authority with regard to medical decisions at BCDC and was not subject to any sort of meaningful administrative review.  Norgell testified that she did not have to get approval to send patients to the emergency room or get STAT blood work, but would only request approval for something "unusual." (Norgell Depo. at 26-30).  There is no apparent

oversight for her decisions *not* to send patients out for additional procedures.  There are several examples in this situation of Norgell acting on her own initiative, as well as approving the actions of Latier and Wood.  Norgell was involved in Kimbrough's case from beginning to end, first by ordering Latier to prescribe Tylenol, and finally by ordering Wood to conduct a urinalysis on December 3rd.  Norgell also had direct contact with Kimbrough at least twice during his stay at BCDC.  As a result of its delegation of authority, the County is liable for all deliberately indifferent acts and decisions made by its final policymakers which result in violations of the constitutional rights of inmates.  Therefore, it is unnecessary for Plaintiffs to demonstrate a "custom or policy" in this case.

     Finally, the County argues that Plaintiffs have failed to show a causal link between any deliberate indifference by the County and Kimbrough's death.  Plaintiffs allege that if Kimbrough had been sent to the hospital by the staff at BCDC, he could have been treated with IV fluids and antibiotics and may not have required the emergency dialysis which ultimately led to his death. (Dr. Joe Godenson May Depo. at 116-18).  Whether any actions by the medical staff at BCDC were substantial factors leading to the death of Kimbrough will be a question for the jury.

**IV. Conclusion**

For the reasons stated herein, it is

**ORDERED** that Defendant's Motions for Judgment on the Pleadings and Summary Judgment (Doc. 339) are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 5, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Unrepresented Party