**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOANNE KIMBROUGH and WILLIE J. KIMBROUGH, SR. et al.,**

        **Plaintiff,**

-vs-                                  **Case No. 6:05-cv-471-Orl-31KRS**

**CITY OF COCOA et al.,**

        **Defendants.**

## ORDER

This case arises out the events surrounding the death of Willie J. Kimbrough, Jr. ("Kimbrough"). Plaintiffs have filed claims under 42 U.S.C. 1983 ("§ 1983") as well as Fla. Stat. § 768.16, *et seq.* ("Wrongful Death Act"). This matter comes before the Court on Motions for Summary Judgment filed by certain Defendants, and the Plaintiffs' Responses thereto.[1]

---

[1] The paired pleadings are as follows: William Gregory's Motion for Summary Judgment, (Doc. 330), and the Plaintiffs' Response thereto, (Doc. 419); Walter Baker's Motion for Summary Judgment, (Doc. 325), and the Plaintiffs' Response thereto, (Doc. 410); Terrence Glover's Motion for Summary Judgment, (Doc. 328), and the Plaintiffs' Response thereto, (Doc. 416); Michael Badarack's Motion for Summary Judgment, (Doc. 324), and the Plaintiffs' Response thereto, (Doc. 411); Anna Cox's Motion for Summary Judgment, (Doc. 326), and the Plaintiffs' Response thereto, (Doc. 417); Richard Gregg's Motion for Summary Judgment, (Doc. 329), and the Plaintiffs' Response thereto, (Doc. 415); Donald Dobson's Motion for Summary Judgment (Doc. 327) and Plaintiff's Response thereto (Doc. 418).

**I. Background**

*A) The Parties and Relevant Entities*

The Plaintiffs, Joanne Kimbrough and Willie J. Kimbrough, Sr., are Kimbrough's parents, and are co-personal representatives of the estate of Kimbrough ("the Estate"). They bring this action on behalf of the survivors of the Estate, including Ashanti Kimbrough, Victoria Fisher Kimbrough, and Di'Andre Michael O'Shone White (the minor surviving children of Kimbrough). The Plaintiffs were residents of Brevard County, Florida.

Officer Terrance Glover ("Glover"), Lt. William Gregory ("Gregory"), Corporal Walter Baker ("Baker"), Officer Michael J. Badarack ("Badarack"), Officer Richard Gregg, II ("Gregg"), and Lt. Anna Cox ("Cox") (collectively "the Defendants")[2] were police officers, at all times relevant to this action, employed by the Cocoa Police Department ("CPD").  Donald Dobson ("Dobson") was the booking officer at CPD on the evening of November 30, 2002, and early morning of December 1, 2002.

*B) Facts*

Late in the evening of November 30, 2002, Kimbrough went to the Shadozz Lounge ("Shadozz") in Cocoa, FL with his cousin, Alivin Adderly ("Adderly").  Kimbrough and Adderly were in the parking lot of Shadozz when Kimbrough left Adderly to walk across the street and talk to a woman. (Adderly Depo. at 65-67).  Less than five minutes passed before Adderly heard sirens

---

[2] Glover, Badarack and Cox are collectively referred to, where appropriate, as the "Arresting Officers."

and turned around to see Glover and Cox approaching Kimbrough from behind.³ (Adderly Depo. at 71-72). Glover yelled "Turn around!" and Kimbrough turned around and gestured with both hands up in the air, as if to indicate "What?". (Adderly Depo. at 65). Badarack, then came up from the side and tackled Kimbrough to the ground, jumped on his back, and then picked him up and threw him on the ground. (Adderly Depo. at 77; Waters Depo at 59).

Glover then came over and began to kick Kimbrough and knee spiked him while he was on the ground. (Waters Depo. at 64-67; Doc. 414-8 at 1). By this time, six to ten patrol cars had descended upon the scene and were parked in a circle around Kimbrough and the Arresting Officers, blocking the view of most bystanders.⁴ (Adderly Depo. at 75; Waters Depo at 71-72, 81, Gregory Depo. at 13-14). Witnesses heard Kimbrough screaming that he was in pain and begging the officers to stop beating him. (Waters Depo. at 73, 82; Doc. 414-9 at 6-7). The officers continued to beat Kimbrough for approximately six minutes, even though he was handcuffed on the ground and not resisting. (Doc. 410 Ex. B; Doc. 414-9 at 4-5). Three officers were seen beating Kimbrough with night sticks and dragging him along the ground. (Doc. 414-11 at 1).⁵ At least four

---

³Glover alleges that he discovered Kimbrough attempting to break into a car in a nearby trailer park, that he chased Kimbrough and that Kimbrough threw a brick or rock at him. (Doc. 328 at 2-4). However, on a Motion for Summary Judgment, the Court must resolve all factual disputes in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Therefore, the Court will assume that Adderly's testimony is true, which makes it unlikely that Kimbrough had time to be in the trailer park at all.

⁴It is unclear at which point each Defendant arrived on the scene, however, the evidence clearly establishes that all the Defendants were on the scene to observe the Arresting Officers holding Kimbrough on the ground and therefore would have been present for at least the second take down, discussed *infra*.

⁵ Badarack admits using two knee spikes on Kimbrough and Baker admits spraying him in the face with a chemical agent - all while he was on the ground. (Badarack Depo. at 59; Doc. 414-19 at

officers were on top of Kimbrough when Gregory arrived on the scene, and Kimbrough was saying that he could not breathe. (Gregory Depo. at 13-14, 20). Badarack admits to using two knee spikes on Kimbrough. (Badarack Depo. at 59). One witness stated that Kimbrough appeared too weak to comply with the officers' demands to get up and when he was placed in the patrol car, he fell out, looking limp as if he was dead. (Doc. 414-11). Even after Kimbrough had been pulled up to a standing position, one of the officers performed another knee spike on him. (Doc. 414-18 at 11-12). As Kimbrough was being put in the patrol car, Gregory recalls Badarack almost running him over to get to where Kimbrough was, and Badarack admits that Kimbrough was taken to the ground a second time. (Gregory Depo. at 17; Badarack Depo. at 66). Officer Christopher Bradshaw ("Bradshaw"), while putting Kimbrough into a patrol car, noticed that his legs were in shackles and heard Kimbrough say that he needed to catch his breath. (Doc. 414-18 at 14-15). Kimbrough told Bradshaw that he needed help getting his feet into the patrol car. (Doc. 414-18 at 14-15). Bradshaw noticed that Kimbrough had a severely swollen black eye. (Doc. 414-18 at 17).

After the arrest and beating, Kimbrough was brought to CPD for booking. Dobson observed Kimbrough being brought in and placed in a cell, but did not book him. Emergency Medical Technicians ("EMTs") arrived at the station at 23:50 to examine Officer Glover, who was not yet there. EMT Phil Butler ("Butler") looked into Kimbrough's cell and saw him laying on the floor of his cell with his pants around his ankles, calling out for an officer to help him. (Doc. 414-14 at 19-20; Doc. 414-15 at 1, 5-6). Butler smelled an odor of feces coming from Kimbrough's cell. (Doc. 415-15 at 1). Even though EMTs were at the station for over 15 minutes waiting to

---

10).

examine Glover, they were never asked to examine Kimbrough. (Doc. 414-14 at 5, 12, 26)  No help was given, even though Kimbrough had a severely swollen black eye, had defecated on himself, had been sprayed in the face with a chemical agent and had mentioned he had asthma. (Doc. 414-18 at 11-12; Doc. 414-18 at 17). Within a few hours of his arrest, Kimbrough was transported to the Brevard County Detention Center ("BCDC") without ever being seen by a medical professional.

On December 4, 2002, Kimbrough bonded out of BCDC, and family members brought him to Cape Canaveral Hospital.  He was diagnosed with acute renal failure secondary to rhabdomyolysis,[6]  and a history of hepatitis and electrolyte abnormalities secondary to rhabdomyolysis. Kimbrough was placed on dialysis but, unfortunately, was pronounced dead at 5:07 p.m. on December 4, 2002.

## II. Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. .*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929

---

[6]Rhabdomyolysis is the destruction or degeneration of skeletal muscle tissue (as from traumatic injury, excessive exertion, or stroke) that is accompanied by the release of muscle cell contents (as myoglobin and potassium) into the bloodstream resulting in hypovolemia (a decrease in the volume of the circulating blood), hyperkalemia (the presence of an abnormally high concentration of potassium in the blood), and sometimes acute renal failure. Medline Plus, U.S. National Library of Medicine, available at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last modified February 4, 2003).

F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

**III. Legal Analysis**

*A) § 1983 Claims*

The Plaintiffs allege that the Defendants are liable under § 1983 for violating Kimbrough's Constitutional rights first, by using or failing to prevent other officers from using excessive force during his arrest in violation of the Fourth Amendment and second, by failing to provide medical care to Kimbrough, in violation of the Fourteenth Amendment.

The Defendants all make the same assertions regarding summary judgment on Plaintiffs' § 1983 claims, arguing that they are each entitled to qualified immunity.

In order to receive qualified immunity, "the government official must first prove that he was acting within [the scope of] his discretionary authority." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Once a defendant establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. *Id*. To determine whether qualified immunity is appropriate, the Court must ask two questions. First, whether, viewed in the light most favorable to the plaintiff, the evidence shows the officers violated Kimbrough's constitutional rights. *Id.* Second, if a violation of a right can be made out, the Court must determine whether that right was clearly established. *Id.*

The parties have not disputed the fact that the defendants were acting within the scope of their discretionary authority during Kimbrough's arrest. Thus, the Court turns to examine whether: (1) there was a violation of a Constitutional right that was (2) clearly established.

**1. Excessive Force Claims**

The first step is to determine if Plaintiffs have made a sufficient showing of excessive force to establish that the Defendants violated one of Kimbrough's Constitutional rights. *See Lee v.*

*Ferraro,* 284 F.3d 1188, 1198 (11th Cir. 2002). "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Id.* Therefore, if Plaintiffs can show sufficient evidence that Kimbrough was the victim of excessive force, they will have established evidence of a Fourth Amendment violation. As discussed above, Plaintiffs have produced ample evidence that Kimbrough was punched, kicked, sprayed with mace, hit with night sticks, and "knee spiked" even though he was not resisting arrest. As such, Plaintiffs have shown ample evidence to support a violation of a Constitutional right.

The second step is to decide whether it is clearly established under the law that the force used in this case was excessive. *Id.* Plaintiffs have presented evidence that Kimbrough was severely beaten by the officers after he was on the ground and in handcuffs. It is well established that "[o]nce an arrestee has been fully secured, such force is wholly unnecessary to any legitimate law enforcement purpose." *Id.* at 1199. Even if Kimbrough did throw a rock at Glover, which seems implausible, police officers are not permitted to exact revenge on suspects. They are simply allowed to secure custody of the suspect, so that he may be dealt with appropriately by the criminal justice system. Any unnecessary force exerted after custody of a suspect is secured is excessive, and no reasonable officer would think otherwise.[7]

The defendants can be held liable under 1983 whether they were actively or passively involved in the use of excessive force on Kimbrough because police officers have "a duty to

---

[7] In the excessive force context, parties may meet the "clearly established" prong by showing that "the officials conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official." *Lee,* 284 F.3d at 1199 (internal quotations and citations omitted). This is such a case.

intervene when another officer uses excessive force." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986). The evidence presented by Plaintiffs clearly shows that there are disputed issues of material fact as to whether excessive force was used. Therefore, none of the defendants are entitled to summary judgment on the excessive force claims.

### 2. Failure to Provide Medical Care

.   "It is well settled that the deliberate indifference to serious medical needs of prisoners" constitutes a violation of the 8th Amendment.[8] " *McElligott v. Foley,* 182 F.3d 1248, 1254 (11th Cir. 1999) (internal citations omitted). Therefore, a plaintiff can establish a claim for failure to provide medical care under § 1983 by showing (1) a serious medical need, (2) deliberate indifference to that need by Defendant, and (3) a causal connection between Defendant's deliberate indifference and Plaintiff's injuries.[9]  *See Hatten v. Prison Health Services, Inc.,* 2006 U.S. Dist. LEXIS 65143, *11 (M.D.Fla. Sept. 13, 2006).

.   "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott,* 182 F.3d at 1255. Examples of deliberate indifference include, *inter alia,* (1) *when an official knows that an inmate is in serious need of medical care and fails or refuses to obtain medical treatment for the inmate*, (2) when a decision is made to take an easier, less efficacious course of treatment, (3) when the need for medical care is obvious and the care that is given is so

---

[8]Because Kimbrough was a pretrial detainee, his rights arise under the 14th Amendment, however, "the case law developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is analogous." *Hatten v. Prison Health Services, Inc.,* 2006 U.S. Dist. LEXIS 65143, *11 (M.D.Fla. Sept. 13, 2006) (internal citations omitted).

[9]Defendants do not challenge the issue of causation, so the Court will not address it.

cursory as to amount to no care at all, or (4) when there is an unjustified delay in providing medical care for a known serious condition. *See id.*

In this case, all Defendants were witnesses to the beating that caused Kimbrough's injuries and therefore they were all aware of his serious medical needs. Several officers testified to the fact that Kimbrough had a severely swollen black eye, that he smelled of feces from defecating on himself, that he said he had asthma and could not breathe, and that he had been sprayed in the face with a chemical agent. Under such circumstances, Kimbrough's need for medical attention was obvious. It is not necessary, as Defendants argue, that they were aware that Kimbrough was suffering from rhabdomyolysis. It is enough that they were aware of a serious medical need, knowledge of the specific condition that led to his death is not required.

None of the Defendants, with the exception of Cox, made any effort to get Kimbrough medical attention. Even though EMTs were called to examine Glover, who had no visible injuries (Doc. 414-14 at 13-14), and Badarack was sent to the hospital for a wrist injury for which he does not even remember being treated (Badarack Depo. at 80, 122); Kimbrough was left lying on the floor of his cell covered in feces and calling out for help. Cox testified that she instructed dispatch to call EMTs for both Glover and Kimbrough. (Cox Depo. at 48; Doc. 408 at 18). However, the EMTs only received a call about Glover and were never asked to examine Kimbrough. (Doc. 414-14 at 5, 12, 26). None of the Officers at the scene made any effort to get Kimbrough medical attention at any point. Because Glover, Baker, Badarack, Gregg, and Gregory were all at the scene where Kimbrough was beaten, they were all aware of his need for medical attention, yet they did nothing. This is enough to create a question of material fact as to whether they were deliberately indifferent and summary judgment is therefore inappropriate.

Although, Dobson was not at the scene of the beating, he too was aware of Kimbrough's serious medical needs and did nothing. Dobson saw Kimbrough being brought into the station and admits that he saw his "full face" about 15 or 20 minutes later. Bradshaw testified that Kimbrough already had a very swollen black eye when he was putting him the car at the scene. (Doc. 414-18 at 15). Therefore, Dobson had to have seen Kimbrough's black eye. Furthermore, Dobson admits that he checked on Kimbrough twice that night. (Doc. 414-24 at 5). Kimbrough told Dobson he was sick and Dobson saw him lying on the floor of his cell. (Doc. 414-24 at 5). The testimony of Butler indicates that Kimbrough was calling out for an officer repeatedly and that his cell smelled of feces. (Doc. 414-14 at 19; Doc. 414-15 at 1)  Also, Butler observed Kimbrough laying on the floor with his pants down around his ankles. (Doc. 414-14 at 20; Doc. 414-15 at 1). Dobson alleges that Kimbrough was only brought in twenty minutes before his shift ended, however, this is contradicted by other testimony. (Doc. 414-24 at 7-8). Dobson testified that he was at the station until 1:00 a.m. on December 1, 2002. (Dobson Depo. at 22). If Kimbrough was in his cell when Butler arrived at 23:50, then there was at least an hour between when Kimbrough arrived and Dobson left. (See Doc. 414-14 at 6).

Dobson saw Kimbrough's black eye, heard him say he was sick, observed him laying on the floor, heard his calls for an officer, and did nothing. This is enough evidence to create a material factual dispute as to whether Dobson was deliberately indifferent to Kimbrough's serious medical needs and make summary judgment inappropriate.

Cox is the only defendant who apparently attempted to get Kimbrough medical attention because she instructed dispatch to contact EMTs to examine him when he arrived at the station. Plaintiffs argue that Cox was deliberately indifferent because she did not follow up to be sure that

-11-

Kimbrough was examined. However, Cox did not return to the station until roughly 45 minutes after the incident because she had a flat tire. (Doc. 414-21 at 17). When she arrived, she saw the EMTs leaving. (Cox Depo. at 48). It may have been negligent of her not to ask the EMTs if they examined Kimbrough, but to sustain a claim under § 1983 the Plaintiffs must show more than mere negligence. As Plaintiffs admit that Cox instructed dispatch to call EMTs for Kimbrough, there cannot be any argument that she did nothing. She ordered dispatch to call for medical attention and reasonably assumed that when she saw EMTs leaving the station, her orders had been followed. Therefore, only Cox will be granted summary judgment with regard to the claim of failure to provide medical care.

*B) Claims under the Wrongful Death Act*

First, the defendants argue that there can be no action under the Wrongful Death Act for the use of excessive force because there is no such thing as the negligent use of excessive force. *See City of Miami v. Sanders,* 672 So. 2d 46, 47-48 (Fla. 2nd DCA 1996). Second, they argue that in order to overcome the immunity granted by Fla. Stat. 768.28(9)(a) the Plaintiffs must prove that the defendants' actions were "in bad faith, with malicious purpose and in a manner exhibiting wanton and willful disregard of human rights" and that such an assertion necessarily precludes an action under the Wrongful Death Act.

Fla. Stat. § 768.28(9)(a) provides, in part, as follows:

(9) (a) No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28 (2002).

Under Defendants' argument, no officer acting in the scope of their employment could ever be held liable under the Wrongful Death Act because a showing that overcomes this immunity statute would preclude an action for negligence.  However, Florida's Wrongful Death Act is not limited to instances of negligence.  The language of the statute allows for recovery "[w]hen the death of a person is caused by the *wrongful act*, negligence, default, or breach of contract or warranty of any person . . ." Fla. Stat. § 768.19 (2002) (emphasis added).  An intentional tort, such as "wanton and willful disregard of human rights" is surely enough to show a "wrongful act." Therefore, it is possible for the Plaintiffs to show the requisite "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" under Fla. Stat. § 768.28(9)(a) and still maintain a cause of action under the Wrongful Death Act.

Therefore, while Plaintiffs may not rely on simple negligence, there is sufficient evidence to create an issue of material fact as to whether Defendants acted either intentionally or with deliberate indifference, either of which will satisfy the requirement of willful or wanton disregard of human rights.[10]  Thus, none of the defendants are entitled to summary judgment on the claims brought under the Wrongful Death Act.

---

[10] "Wantonness has been defined as "deliberate indifference to a substantial risk of serious harm to a prisoner." *Nichols v. Riley*, 141 Fed. Appx. 868, 869 (11th Cir. 2005).

**IV. Conclusion**

For the reasons stated herein, it is

**ORDERED** that the Motions for Summary Judgment filed by Glover, Badarack, Baker, Gregg, Gregory and Dobson (Docs. 328, 324, 325, 329, 330 and 327) are **DENIED**.  Cox's Motion for Summary Judgment (Doc. 326) is **GRANTED** in part and **DENIED** in part.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 19, 2006.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE