**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOANNE KIMBROUGH and WILLIE J. KIMBROUGH, SR. et al.,**

        **Plaintiff,**

-vs-                                       **Case No. 6:05-cv-471-Orl-31KRS**

**CITY OF COCOA, et al.**
        **Defendants.**

_____

## ORDER

This cause came on for consideration on Plaintiff's Third Amended Motion for Sanctions for Spoliation of Evidence. Doc. No. 390. Plaintiffs seek sanctions arising from the failure of Defendant Prison Health Services, Inc. (PHS) and the Brevard County Sheriff (Sheriff) to produce two documents: (1) a complete Medical Monthly Report for January 2003[1]; and (2) a handwritten note found with Willie Kimbrough, Jr.'s medical file at the Brevard County Detention Center (Detention Center). Specifically, Plaintiffs ask that the Court strike the pleadings filed by PHS and the Sheriff or, alternatively, instruct the jury that it can draw an adverse inference from these defendants' failure to produce the documents.[2] Doc. No. 390.

---

[1] When the motion was filed, Plaintiffs alleged that none of the medical monthly reports had been produced. Before the hearing, all of these reports, except for a complete copy of the Medical Monthly Report for January 2002 and January 2003, had been produced. Doc. No. 426 at 2. Plaintiffs' argument at the hearing related only to the Medical Monthly Report for January 2003.

[2] Plaintiffs also ask that if the Court determines that the spoliation of evidence was merely negligent, the Court "apply a rebuttable presumption as to all of the claims made against

PHS and the Sheriff filed responses in opposition to the relief requested. Doc. Nos. 426, 428, 507.

I held an evidentiary hearing on the motion on November 29, 2006. At the beginning of the hearing, PHS renewed its earlier written motion to preclude the Plaintiffs from presenting witnesses and evidence because they had not disclosed their witness and exhibits lists by the date required in an order I entered. *See* Doc. Nos. 499, 508. At the close of the Plaintiffs' presentation of evidence, both PHS and the Sheriff moved to deny the motion based on failure of proof. I deferred ruling on all of these motions pending the presentation of evidence by PHS and the Sheriff. The matter is now ripe for consideration.

**I.     EVIDENCE.**[3]

*The Handwritten Note.*

Willie Kimbrough, Jr., who had been incarcerated at the Detention Center, was hospitalized after he was released from the Detention Center on bond. He died in the hospital on December 4, 2002. *See* Doc. No. 404 at 4. Sometime after Kimbrough's death, the Florida

---

Defendant[s], PHS, and the Brevard County Sheriff." Doc. No. 390 at 7. The rebuttable presumption to which Plaintiffs refer is a presumption that may be applied under Florida law. *See Pub. Health Trust v. Valcin*, 507 So. 2d 596 (Fla. 1987). Federal law, not Florida law, governs the imposition of spoliation sanctions in this case. *See Martinez v. Brink's Inc.*, 171 Fed. Appx. 263, 268 n. 7 (11th Cir. 2006). As discussed in more detail *infra*, federal law does not permit spoliation sanctions arising from negligent loss of evidence.

[3] Because the final pretrial conference and trial dates are fast approaching, I summarize the evidence presented at the hearing from my memory and notes without the benefit of a transcript.

Department of Law Enforcement (FDLE) requested production of the Detention Center's medical file pertaining to Kimbrough.[4]

The medical file was maintained in the file room located in the infirmary at the Detention Center. Brenda Holda, the charge nurse, and Tamara Fletcher and Leyla Vaughn, licensed practical nurses, were employed by PHS and were then working at the Detention Center. After FDLE made the request for production, Holda, Fletcher and Vaughn looked at Kimbrough's medical file. Vaughn recalls that the file had a paper on top of it, but she could not otherwise describe the paper or its contents. Fletcher recalls that the document was one-half of an 8 ½"x 11" sheet of paper, which bore handwriting that included a number or numbers and misspelled words. Fletcher did not recall the content of the document, but she testified that it did not appear to be a professional note.

Fletcher was assigned to copy the file. Before she did so, Holda took the file around the corner of the room out of Fletcher's sight. Fletcher then heard the sound of paper being crumpled and torn. When Fletcher later began to copy the file, after the file apparently had been returned to the file room, the handwritten note she had seen previously was no longer with the file. Fletcher asked Holda about the note, to which Holda replied, "What note?"[5] Fletcher discussed the missing

---

[4] Reports from the subsequent FDLE investigation, written directives and unsworn statements from the presuit inquiry were attached to the motions for sanctions filed by Plaintiffs. Doc. Nos. 371, 372, 390. PHS objected to consideration of these documents because they were not included in Plaintiffs' exhibit list, because Florida law precludes use of the statements made during the presuit inquiry, and because they are hearsay. None of these documents were admitted into evidence at the hearing. Accordingly, I have not considered them in ruling on the motion for sanctions.

[5] Holda was listed as a witness but was not called to testify at the evidentiary hearing.

note with Vaughn and reported the missing note to Holda's supervisor, Mary Blue-Crowe. Fletcher did not see the note any time after these events.[6]

*The Medical Monthly Report for January 2003.*

PHS provided health care services for inmates at the Detention Center pursuant to a contract it entered into with the Sheriff. The contract required PHS to "submit monthly and other periodic reports to the commander of the Brevard County Detention Center for the SHERIFF or the SHERIFF's health representative, concerning and reflecting on the overall operation of the health care services program in general or on the health status in particular of the inmates committed to the care, custody, and control of the SHERIFF." Plaintiff's ex. 30 ¶ 9.2.

In accordance with this contractual requirement, the Health Services Administrator employed by PHS prepared medical monthly reports. Medical monthly reports prepared for dates ranging from 2001 through 2003 were introduced into evidence, Joint Composite ex. 1, but the report for January 2003 is incomplete, *id.* Tab 17. The medical monthly reports admitted into evidence do not contain any discussion of specific quality of care issues.

Diane Marie Sparks, then an employee of PHS, became the Detention Center Health Services Administrator sometime in January 2003. Sparks testified that the Medical monthly reports included a narrative report of personnel changes, changes in the contract (such as work hours), the dates of conferences and meetings held, reports on death or near death of inmates,

---

[6] Other facts were alleged in the motions and responses but were not established at the evidentiary hearing. Among other things, PHS asserted that it had produced a note that it believed to be the note sought by Plaintiffs, doc. no. 428 at 2, which assertion was disputed by Plaintiffs because the note produced was not on paper of the size described by Fletcher. PHS did not introduce into evidence the note it produced.

hospitalization, and special events (such as flu shots), facility issues, training, and goals. The reports also had supporting documents, including statistical reports, reports on pharmaceutical usage, and cost reports, among other things.

The Health Services Administrator also held various meetings. These included meetings of the Medical Audit Committee (MAC), which usually met monthly; the Special Inmate Needs Committee (SINC), which met weekly or every other week; the Quality Improvement (QI) meeting, which met quarterly; and a staff meeting, which usually met monthly.

The minutes of the MAC meetings, with supporting statistical reports, inmate grievances regarding health care, and reports of major incidents regarding health care, were submitted separately from the medical monthly reports. The MAC reports typically did not include a discussion of quality of care issues, *see, e.g.*, MAC meeting minutes at Joint Composite ex. 1, tabs 8, 9, 11, 13, 14 ; these issues would be discussed at the QI meetings. The QI reports would include chart audits, goals, deaths or near death of inmates, and statistical reports. *See, e.g.*, QI meeting reports at Joint Composite ex. 1, tabs 7, 8. The QI report would only discuss the death of an inmate who died while in the Detention Center.

The monthly reports were sent to Enid Bourgault, the Jail Administrative Officer for the Detention Center, an employee of the Sheriff, and should also have been sent to the Detention Center Commander. Sparks kept a copy of the reports in her office and on a PHS computer, and sent a copy of the report to the PHS Regional Vice President and to the internal and external

contract monitors. When Sparks was transferred to work at a location other than the Detention Center, she left all of these records at the Detention Center.[7]

At the end of each contract year, Bourgault caused her copies of the medical monthly reports to be shipped to the Detention Center's archives. These archives have been searched, and the complete Medical Monthly Report for January 2003 has not been located. PHS also conducted an in-house search, with the assistance of outside computer consultants, of backup tapes maintained by PHS for disaster recovery purposes to attempt to locate the Medical Monthly Report for January 2003, but it has not been recovered.

Sparks prepared the Medical Monthly Report for January 2003. Only a portion of the report has been located. Joint Composite ex. 1, Tab 17. The partial report that has been located does not contain the narrative summary. There is also no MAC report with accompanying statistical report and grievance log for January 2003. Finally, there is no QI meeting report, but Sparks did not recall whether a QI meeting was held in January 2003.

The Medical Monthly Report for December 2002 does not refer to Kimbrough's hospitalization or death. Joint Composite ex. 1, Tab 16.[8] The MAC report for December 2002

---

[7] Sparks no longer works for PHS. She testified that she made a "zip drive" of computer-stored records from PHS, which she still had in her possession but which she could not read due to technical difficulties. She testified that the Medical Monthly Report for January 2003 could be on this "zip drive." Sparks gave the "zip drive" to counsel for PHS at the hearing so that PHS could attempt to retrieve the information stored on the "zip drive" to see if the Medical Monthly Report for January 2003 was stored in that device. PHS is attempting to retrieve information stored on the "zip drive," and it will produce the Medical Monthly Report for January 2003 if it is recovered from this computer-storage device.

[8] This report, dated January 21, 2003, was purportedly authored by Lino Guitierrez, who preceded Sparks as the Health Services Administrator for PHS. The record is not clear when

also does not refer to Kimbrough. The MAC meeting minutes reflect that the meeting was held at 11:00 a.m. on December 4, 2002, which was before the time of Kimbrough's death. *Id.*

Sparks recalled discussions about Kimbrough, but she could not recall whether any of these discussions occurred during a formal meeting or only informally. No other witness recalled discussing Kimbrough at a staff meeting or other formal meeting.

## II. APPLICABLE LAW.

"'Spoliation' is the 'intentional destruction, mutilation, alteration, or concealment of evidence.'" *Optowave Co. v. Nikitin*, No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *7 (M.D. Fla. Nov. 7, 2006)(quoting Black's Law Dictionary 1437 (8th ed. 2004)). Federal law governs the imposition of spoliation sanctions in this case, but state law may be consulted to guide the Court in its analysis. *See Martinez*, 171 Fed. Appx. at 268 n. 7; *Optowave Co.*, 2006 WL 3231422, at * 8 (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)).

Generally, spoliation is established when the party seeking sanctions proves (1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence; and (3) that the evidence was crucial to the movant being able to prove its *prima facie* case or defense. *See Optowave Co.*, 2006 WL 3231422, at *8; *Golden Yachts, Inc. v. Hall*, 920 So.2d 777, 781 (Fla. 4th Dist. Ct. App. 2006). Additionally, in this circuit sanctions for spoliation

---

Guitierrez left the employment of PHS, but the personnel report for employees working for PHS at the Detention Center in January 2003 does not include Guitierrez's name. Joint Composite ex., 1, Tab 16. The report dated January 21, 2003, including its attachments, all relate to events that occurred at the Detention Center in December 2002. No evidence was offered that this was not the actual Medical Monthly Report for December 2002, and the authenticity of this report is not the subject of the present motion for sanctions.

of evidence are appropriate "only when the absence of that evidence is predicated on bad faith. . . . 'Mere negligence' in losing or destroying the records is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case.'" *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (quoting *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)).

**III.   ANALYSIS**.

*A.     The Medical Monthly Report for January 2003.*

The first element of the spoliation test has been established with respect to the Medical Monthly Report for January 2003. Sparks testified that she created a Medical Monthly Report for January 2003, and that the portion of the report produced is not the complete report she created.

As to the second element of the test, Plaintiffs do not cite any legal authority supporting their contention that PHS and the Sheriff had an obligation to preserve the Medical Monthly Report for January 2003. They cite to no contractual provision or Florida law that required either PHS or the Sheriff to preserve these reports. The evidence did not establish that FDLE requested the reports as a part of its investigation. Further, as discussed in more detail below, because the reports generally do not discuss quality of care issues, neither PHS nor the Sheriff would have had reason to believe that these reports would be relevant to either the FDLE investigation or to any civil action that might be brought on Kimbrough's behalf.

Even assuming that a duty to preserve these reports existed, Plaintiffs failed to establish that the Medical Monthly Report for January 2003 is crucial to their claims. The testimony and exhibits, which include many other medical monthly reports, established that the monthly medical

reports are basically compilations of statistics and cost data.  They do not contain a discussion of quality of care issues, except for the QI reports.  There was no evidence that a QI meeting was held in January 2003, and thus no evidence that the Medical Monthly Report for January 2003 would have included any quality of care information.  Additionally, because Kimbrough was not an inmate at the Detention Center when he was admitted to the hospital and when he died, the evidence established that these events would not have been recorded in a medical monthly report.  Accordingly, the evidence is insufficient to establish that the missing portion of the Medical Monthly Report for January 2003 contains any evidence crucial to the Plaintiffs' case.

Finally, there was no evidence that either PHS or the Sheriff acted in bad faith with respect to the inability to produce the complete Medical Monthly Report for January 2003.  PHS has gone to extraordinary lengths to attempt to retrieve the report from email backup tapes and Sparks's "zip drive."  Bourgault testified that she caused her copies of the medical monthly reports for the pertinent fiscal year to be boxed and sent to archives.  The archives have been searched, but the complete report has not been found.  There is no showing that anyone acting on behalf of PHS or the Sheriff took any steps to destroy or otherwise tamper with the medical monthly reports, specifically the Medical Monthly Report for January 2003.

Accordingly, Plaintiffs' motion for sanctions based on the failure to produce a complete copy of the Medical Monthly Report for January 2003 is not supported by the evidence.

B.   *Handwritten Note.*

The first element of the spoliation test has been established with respect to the handwritten note. Two witnesses recall seeing the note when Kimbrough's medical file was retrieved in response to the FDLE request for production of that file.

As to the second element of the spoliation test, Plaintiffs once again cite no contract or other legal authority supporting their argument that PHS or the Sheriff had a duty to maintain the note. The evidence established that, at the time the note was seen by the witnesses, FDLE had requested a copy of Kimbrough's medical file. Plaintiffs do not show how that request created a duty to maintain the note for purposes of the present civil litigation. I note, however, that the contract between PHS and the Sheriff refers to a duty to maintain medical records. It also provides that PHS had physical custody of the medical records, and that the medical records were the property of the Sheriff. Plaintiffs' ex. 30 ¶ 9.1. Although the evidence is not clear that the note was a medical record, the evidence established that the note was kept with Kimbrough's medical records. Accordingly, a duty to maintain the note as part of Kimbrough's medical records may have existed.

Whether the third element of the spoliation test has been satisfied is more problematic. The evidence did not establish the content of the note. All that was shown was that it was handwritten, with a number or numbers and misspelled words, and that it did not appear to be a professional note. There was no evidence of who wrote the note or how it came to be kept with Kimbrough's medical file.

Plaintiffs argue that the Court can conclude that the note would be crucial their case because Holda deemed it to be so damaging that she apparently destroyed it rather than produce it to FDLE. While the argument is compelling, it falls short of establishing that the evidence is crucial to Plaintiffs' case. Evidence has been found to be crucial when it goes to the heart of a party's ability to prove its claim or defense. For example, in *Flury*, 427 F.3d at 941, 943, the court found that an automobile alleged to have a manufacturing defect, which was destroyed by plaintiff's insurer, was crucial to the defense of a crashworthiness case. Similarly, in *Optowave Co.*, 2006 WL 3231422, at * 12, the court found that destroyed emails and other computer-stored records that contained drafts of, and discussions about, a contract at issue in the litigation were crucial to a determination of the meaning of undefined terms in the contract and the parties' understanding of the contract.

As shown by the various summary judgment motions made by defendants which have been denied by the Court, the lack of the handwritten note has not undermined Plaintiffs' ability to present a *prima facie* case. Accordingly, Plaintiffs have not established the third element of the spoliation test as to the handwritten note.

Even if the Plaintiffs proved that the note was crucial to their case, they have not established bad faith on behalf of the Sheriff. The testimony established that Holda, an employee of PHS, removed Kimbrough's medical file with the note from the file room. Fletcher then heard the sound of tearing and crumpling paper. Thereafter, the note was no longer with the file. This would be sufficient to establish that PHS acted in bad faith regarding the destruction of the note. However, there is no evidence that Holda was a final policymaker acting on behalf of the Sheriff

as to this incident. *Cf.* Doc. No. 433 at 8 (discussing liability of Brevard County based on actions of a PHS employee who had been delegated policymaking authority). Plaintiffs also presented no evidence or legal authority supporting their argument that Holda was acting within the scope of her authority as an agent of the Sheriff with respect to her actions regarding the note.[9]

Accordingly, Plaintiffs' motion for sanctions based on the failure to produce the handwritten note is not supported by the evidence.

This order should not be read to mean that the circumstances surrounding the destruction of the note would necessarily be inadmissible at trial. Courts have found that loss of evidence may be relevant and admissible for the jury's consideration, and that adverse inferences arising from the destruction of documents can be argued by counsel in closing. For example, in *Jordan ex rel. Shealey v. Masters*, 821 So. 2d 342 (Fla. 4th Dist. Ct. App. 2002), a sexual abuse case, the defendant offered an audiotape of the plaintiff's recantation of his allegations of sexual abuse but did not produce the videotape of the same event. The trial court gave an instruction to the jury, based on *Valcin*, that permitted the jurors to conclude that the withheld evidence would be unfavorable to the defendant. The Florida Fourth District Court of Appeal found that the adverse inference instruction was improper because, among other things,[10] the plaintiff did not establish

---

[9] Indeed, Plaintiffs argued in another context in this case that PHS was not the agent of Brevard County for purposes of limitations on the award of punitive damages. *See* Doc. No. 431 at 12. Plaintiffs are cautioned that the doctrine of judicial estoppel may prevent them from prevailing on an agency theory in one context and disclaiming a similar agency relationship in another context in the same litigation.

[10] The court also found the evidence insufficient to show that the videotape existed at one time. 821 So. 2d at 347.

that the missing videotape was essential to presenting a *prima facie* case. *Id.* at 347. The court wrote that the lawyers should have been permitted to argue in closing that the jury could draw adverse inferences from the evidence as part of their closing argument. *Id.*

Similarly, in *Martino v. Wal-Mart Stores, Inc.*, 835 So. 2d 1251 (Fla. 4th Dist. Ct. App. 2003), the court found that an adverse inference instruction to the jury was not appropriate because the alleged spoliator had no duty to preserve the missing evidence. However, it held that the evidence of the spoliation could be presented to the jury and that counsel was free to make arguments concerning the adverse inference that could be drawn from the failure to produce the evidence. *Id.* at 1257 & n.2.

Whether such evidence and arguments will be permitted in this case is a decision to be made by the presiding district judge.

**IV.  CONCLUSION.**

Because Plaintiffs have not established each element necessary to support sanctions for spoliation of evidence, Plaintiffs' Third Amended Motion for Sanctions for Spoliation of Evidence, doc. no. 390, is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida this 4th day of December, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties