**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOANNE KIMBROUGH and WILLIE J. KIMBROUGH, SR. et al.,**

      **Plaintiffs,**

-vs-                                                            Case No.  6:05-cv-471-Orl-31KRS

**CITY OF COCOA, et al.,**

      **Defendants.**

# ORDER

This case arises out of the events surrounding the death of Willie J. Kimbrough, Jr. ("Kimbrough"). This matter comes before the Court on a Motion for Judgment on the Pleadings and Summary Judgment (Doc. 333) filed by Defendant Sheriff Jack Parker ("the Sheriff") and Plaintiffs' Response thereto (Doc. 681).

**I. Background**

    *A) Parties*

The Plaintiffs, Joanne Kimbrough and Willie J. Kimbrough, Sr., are Kimbrough's parents, and are co-personal representatives of the estate of Kimbrough (the "Estate"). They bring this action on behalf of the survivors of the Estate, including Ashanti Kimbrough, Victoria Fisher Kimbrough, and Di'Andre Michael O'Shone White (the minor surviving children of Kimbrough) against multiple defendants, including the Sheriff of Brevard County, FL.  (Doc. 121 at 5).[1]

---

[1] Doc. 121 refers to Plaintiffs' Third Amended Complaint.

Prison Health Services, Inc. ("PHS") is a private company which was under contract with the Sheriff in December, 2002 to provide medical services to inmates incarcerated at the Brevard County Detention Center ("BCDC"). Dr. Aileen Norgell ('Norgell") was the Medical Director at BCDC, employed by PHS, in December 2002. PA Beverly Wood ("Wood") and RN Sandra Latier ("Latier") were employees of PHS who worked at BCDC in December, 2002.

*B) Treatment of Kimbrough*

On the night of November 30, 2002, Kimbrough was chased, beaten and arrested by several police officers in the City of Cocoa. In the early morning hours of December 1, 2002 Kimbrough was transported to BCDC. (Wood Depo. at 214-15). When he arrived at BCDC his eye was badly bruised and swollen and he had trouble standing while being fingerprinted. (Mendiola Depo. at 11-12, 17; Peggy Williams Depo. at 9-10). Rather than sending Kimbrough to the hospital, BCDC took custody of him.

At 4:00 p.m. on December 1, 2002, Kimbrough was seen in the infirmary by Latier, who noted that he was in a wheelchair because he was unable to walk, he had a black eye, and his left thigh was swollen. (Latier Depo. at 42-44). Norgell approved a telephone order for two Extra Strength Tylenol twice daily and Kimbrough was placed in the medical pod of the jail. (Latier Depo. at 46-48).

On December 2, 2002, Kimbrough visited the infirmary twice and was seen by Norgell both times. Kimbrough told Norgell that he had been beaten by police officers and that he thought his left leg and ribs were broken. (Norgell Depo. at 71). Kimbrough was still in a wheelchair and told Norgell that he could not walk because his leg hurt. (Norgell Depo. at 71). He also complained that he had been vomiting blood and had blood in his stool. (Norgell Depo. at 71).

Norgell did a brief physical examination and prescribed 650mg of Tylenol twice daily, and 150mg of Zantac twice daily. (Norgell Depo. at 17, 79-81).  During Kimbrough's second visit to the infirmary, Norgell ordered an X-ray of his leg and chest, but these x-rays were never performed. (Norgell Depo. at 98; Wood Depo. at 133).  Norgell admits that she only examined Kimbrough's thighs while he was seated in the wheelchair and did not examine the back of either thigh. (Norgell Depo. at 120-1).  She offered him a bed in the infirmary but he refused because he wanted access to the telephone. (Norgell depo. at 106).

At some point on December 3, 2002 Norgell was notified that Kimbrough had been having trouble urinating and had blood in his urine. (Norgell Depo. at 129-30). She ordered a urinalysis and Wood offered to perform the test. (Norgell Depo. at 129-30).  Kimbrough was brought to the infirmary at 3:30 p.m. on December 3rd, and Wood attempted to get a witnessed urine sample from him, but Kimbrough was unable to urinate. (Wood Depo. at 71-4).  At this time Kimbrough complained of sweats and coughing up blood. (Wood Depo. at 75-6).  Wood was concerned that he had a respiratory infection, possibly even tuberculosis. (Wood Depo. at 75-6). Wood listened to his breathing with a stethoscope and prescribed two kinds of antibiotics. (Wood Depo. 76, 189). Wood also noticed at this time that Kimbrough was having trouble standing up on his own. (Wood Depo. at 91).  Wood tried to obtain a urine sample again at 5:15 p.m. with no success. (Wood Depo. at 94-5).  At that point she offered to catheterize Kimbrough but he refused.  Wood was not able to obtain a sample from Kimbrough until 8:20 p.m. – nearly five hours after her first attempt. (Wood Depo. at 95-6). Wood testified that Kimbrough's urine was "amber" when it should have been "straw colored." (Wood Depo. at 107).  She believed there was blood in his urine but did not use a microscope to find out if it was blood or myoglobin producing the red color. (Wood Depo. at

151-2). Wood admits that at this point she suspected that Kimbrough had one of three serious medical conditions: dehydration, injury to his kidneys, or problems with the flow of blood to the kidneys. (Wood Depo. at 99-102). She ordered blood work to be done the next morning. (Wood Depo. at 138).

Late in the evening of December 3, 2002, Kimbrough made bond and was picked up by his family. His family took him to Cape Canaveral Hospital at 1:22 a.m. on December 4th, where he was diagnosed with acute renal failure secondary to rhabdomyolysis.[2] (Doc. 384-4; Doc. 384-5). Kimbrough died later that day.

**II. Standard of Review**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

---

[2] Rhabdomyolysis is the destruction or degeneration of skeletal muscle tissue (as from traumatic injury, excessive exertion, or stroke) that is accompanied by the release of muscle cell contents (as myoglobin and potassium) into the bloodstream resulting in hypovolemia (a decrease in the volume of the circulating blood), hyperkalemia (the presence of an abnormally high concentration of potassium in the blood), and sometimes acute renal failure. Medline Plus, U.S. National Library of Medicine, available at http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last modified February 4, 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

**III. Legal Analysis**[3]

*A) § 1983 Claim*

The Sheriff correctly asserts that the doctrine of *respondeat superior* does not apply to claims arising under § 1983. *Engelleiter v. Brevard County Sheriff's Dept.*, 290 F. Supp. 2d 1300, 1308 (M.D.Fla. 2003). However, the Sheriff then argues that to establish a claim against it, Plaintiff must show that the violation of Kimbrough's constitutional rights was the result of a "policy" or "custom" maintained by the Sheriff. Defendant contends that Plaintiffs have failed to produce evidence of a custom or policy of the Sheriff that caused Kimbrough's injuries.

While it is true that § 1983 liability cannot be imposed under a theory of respondeat superior, the Sheriff may still be liable under § 1983 for the single act of a final policymaker. *See Mandel v. Doe,* 888 F.2d 783, 791-92 (11th Cir. 1989). In fact, the Sheriff's liability under § 1983 may be established in one of four ways:

> (1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, *or* (2), the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, *or* (3) the final policymakers of the local governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, *or* (4) the final policymakers of the local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate employee.

*Sherrod v. Palm Beach County School District,* 424 F. Supp. 2d 1341, 1344 (S.D.Fla. 2006) (emphasis added).

---

[3]The following legal analysis assumes that the facts are accepted in the light most favorable to the Plaintiffs. At trial, the jury is free to interpret the facts differently and come to different conclusions.

In this case, the Sheriff delegated his policymaking authority over medical decisions at the prison to PHS and its employees. (See Doc. 339-9 at 1-2, 4). Norgell's position as the Medical Director for BCDC, gave her final policymaking authority over medical decisions at BCDC and therefore, because of his delegation, the Sheriff can be held liable for any deliberately indifferent acts by Norgell that led to a violation of Kimbrough's constitutional rights. The testimony of the parties provides sufficient evidence that Norgell had final policymaking authority with regard to medical decisions at BCDC and was not subject to any sort of meaningful administrative review. Norgell testified that she did not have to get approval to send patients to the emergency room or get STAT blood work, but would only request approval for something "unusual." (Norgell Depo. at 26-30). There is no apparent oversight for her decisions *not* to send patients out for additional procedures. There are several examples in this situation of Norgell acting on her own initiative, as well as approving the actions of Latier and Wood. Norgell was involved in Kimbrough's case from beginning to end, first by ordering Latier to prescribe Tylenol, and finally by ordering Wood to conduct a urinalysis on December 3rd. Norgell also had direct contact with Kimbrough at least twice during his stay at BCDC. The Sheriff is liable for all deliberately indifferent acts and decisions made by its final policymakers which result in violations of the constitutional rights of inmates. Therefore, Plaintiffs have presented sufficient evidence to support a claim under § 1983 against the Sheriff.[4]

---

[4] Plaintiffs also assert several customs and policies that support their § 1983 claim, however, as this Court does not grant partial summary judgment based on theories of liability, there is no need to address each theory individually. Therefore, this Court offers no opinion as to the viability of Plaintiffs other theories.

The Sheriff also argues that Plaintiffs have failed to show a causal link between any deliberate indifference by the Sheriff and Kimbrough's death.  Plaintiffs allege that if Kimbrough had been sent to the hospital by the staff at BCDC, he could have been treated with IV fluids and antibiotics and may not have required the emergency dialysis which ultimately led to his death.  (Godenson May Depo. at 116-18).  Whether any actions by the medical staff at BCDC were substantial factors leading to the death of Kimbrough will be a question for the jury.

### *B) Wrongful Death Claims*

The Sheriff also moves for summary judgment on claims brought under Florida's Wrongful Death Act, Fla. Stat. §§ 768.16 *et seq.*  However with regard to this state law claim, the Sheriff may be held liable under the doctrine of respondeat superior.  It is undisputed that PHS was working as an agent of the Sheriff at the BCDC.  Therefore, because this court has already ruled that Plaintiffs have produced sufficient evidence to maintain causes of action against PHS and its employees, the Sheriff is not entitled to summary judgment on this count either.

**IV. Conclusion**

Accordingly, it is

**ORDERED** that the Sheriff's Motion for Summary Judgment (Doc. 333) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 10, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party